## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

MINOCQUA BREWING COMPANY LLC
and KIRK BANGSTAD,

>    *Plaintiffs-Appellants*

>    *v.*

DANIEL HESS, *et al.*,

>    *Defendants-Appellees*

Appeal from the United States District Court
for the Western District of Wisconsin,
Case No. 3:25-cv-00325-jdp,
the Honorable James D. Peterson, Chief United
States District Judge, Presiding

## BRIEF OF DEFENDANTS-APPELLEES

HANSEN REYNOLDS LLC
Andrew A. Jones (Counsel of Record)
Andrew J. Kramer
301 N. Broadway, Suite 400
Milwaukee, Wisconsin 53202
(414) 455-7676
ajones@hansenreynolds.com
akramer@hansenreynolds.com

*Attorneys for Defendants-Appellees*

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Save As          Clear Form

Appellate Court No: 25-2092

Short Caption: Minocqua Brewing Company LLC, et al. v. Daniel Hess, et al.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

[ ]     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)     The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
        Daniel Hess, Mitchell Ives, Scott Holewinski, William Fried, and Robert Almekinder

(2)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
        Hansen Reynolds, LLC

(3)     If the party, amicus or intervenor is a corporation:

        i)      Identify all its parent corporations, if any; and
                N/A

        ii)     list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:
                N/A

(4)     Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:
        N/A

(5)     Provide Debtor information required by FRAP 26.1 (c) 1 & 2:
        N/A

Attorney's Signature: s/Andrew A. Jones          Date: July 3, 2025

Attorney's Printed Name: Andrew A. Jones

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes [✓]   No [ ]

Address: Hansen Reynolds LLC

         301 N. Broadway, Ste. 400, Milwaukee, WI 53202

Phone Number: (414) 455-7676          Fax Number: (414) 273-8476

E-Mail Address: ajones@hansenreynolds.com

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 25-2092

Short Caption: Minocqua Brewing Company LLC, et al. v. Daniel Hess, et al.

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Daniel Hess, Mitchell Ives, Scott Holewinski, William Fried, and Robert Almekinder

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Hansen Reynolds LLC

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        N/A

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        N/A

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/Andrew J. Kramer     Date: July 7, 2025

Attorney's Printed Name: Andrew J. Kramer

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☐    No ☑

Address: Hansen Reynolds LLC

301 N. Broadway, Ste. 400, Milwaukee, WI 53202

Phone Number: (414) 455-7676     Fax Number: (414) 273-8476

E-Mail Address: akramer@hansenreynolds.com

rev. 12/19 AK

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ iii

JURISDICTIONAL STATEMENT .................................................................... 1

STATEMENT OF THE ISSUE............................................................................ 1

STATEMENT OF THE CASE ............................................................................ 1

    A.  Material Facts.............................................................................................. 1

        1.  The Administrative Review Permit Requested by MBC and Issued by the County Planning and Zoning Department ....................................... 1

        2.  The Conditional Review Permit Requested by MBC and Issued by the Committee............................................................................................... 3

        3.  MBC's Efforts to Avoid the CUP Revocation....................................... 7

        4.  MBC's Operation Without a Permit in 2025 and Its Application for a New Permit ............................................................................................. 9

    B.  The Procedural History Below and the District Court's Rulings........................... 10

SUMMARY OF ARGUMENT ............................................................................ 11

STANDARD OF REVIEW ................................................................................. 13

ARGUMENT........................................................................................................ 15

    A.  MBC Failed to Demonstrate a Likelihood of Success on the Merits .................... 15

        1.  The Applicable First Amendment Standard .................................... 15

        2.  The District Court Did Not Require MBC to Satisfy an Incorrect Standard ... 17

        3.  Regardless, MBC Did Not Establish a Causal Connection Between MBC's Speech and the Committee's Actions ............................................. 19

            a.  MBC's Speech Was Not a Motivating Factor in the Committee's Decisions ............................................................................................. 19

            b.  Regardless, the Committee Had a Non-Retaliatory Basis For Its Decisions, and MBC Cannot Show That the Reasons Are Pretext............................... 22

B. MBC Also Was Not Entitled to a Preliminary Injunction Based on the Remaining Elements of the Applicable Standard ................................................................. 24

1. MBC Failed to Demonstrate It Would Suffer Irreparable Harm in the Absence of the Requested Injunction ............................................................................. 25

a. Bangstad's Continued Political Speech Undermines Any Claim of Irreparable Harm ....................................................................................... 25

b. MBC's Only Other Claimed Harms Are Financial Losses That Could Be Remedied by Monetary Damages .............................................................. 26

c. MBC is Currently Pursuing Multiple Other Adequate Remedies at Law ... 27

d. MBC's Delay in Pursuing a Preliminary Injunction Undermines Any Claim of Irreparable Harm ...................................................................................... 28

e. A Preliminary Injunction Would Alter the Status Quo .............................. 28

2. The Balance of Harms Weighs Strongly Against an Injunction ...................... 29

CONCLUSION ............................................................................................................ 30

CERTIFICATE OF COMPLIANCE ............................................................................ 31

**Cases**

*3M v. Pribyl,*
259 F.3d 587 (7th Cir. 2001) ........................................................ 13

*Abbott Labs. v. Mead Johnson & Co.,*
971 F.2d 6 (7th Cir. 1992) ........................................................... 14

*Arcara v. Cloud Books, Inc.,*
478 U.S. 697 (1986) ......................................................... 21, 26, 30

*Bridges v. Gilbert,*
557 F.3d 541 (7th Cir. 2009) ........................................................ 17

*Carter v. Chi. State Univ.,*
778 F.3d 651 (7th Cir. 2015) ........................................................ 17

*Cassell v. Snyders,*
990 F.3d 539 (7th Cir. 2021) ............................................ 13, 14, 15, 27, 29

*Culver v. Gorman & Co.,*
416 F.3d 540 (7th Cir. 2005) ....................................................... 16

*Deeren v. Anderson,*
72 F.4th 229 (7th Cir. 2023) ........................................................ 18

*DM Trans, LLC v. Scott,*
38 F.4th 608 (7th Cir. 2022) ........................................................ 13

*Douglas v. Reeves,*
964 F.3d 643 (7th Cir. 2020) .................................................... 15, 16

*D.U. v. Rhoades,*
825 F.3d 331 (7th Cir. 2016) ........................................................ 26

*EEOC v. Wal-Mart Stores, Inc.,*
38 F.4th 651 (7th Cir. 2022) ........................................................ 13

*EEOC v. Wal-Mart Stores East, L.P.,*
113 F.4th 777 (7th Cir. 2024) ....................................................... 13

*Elrod v. Burns,*
    427 U.S. 347 (1976) ................................................................. 25

*FKFJ, Inc. v. Vill. of Worth,*
    11 F.4th 574 (7th Cir. 2021) ..................................................... 15

*Forest County v. Goode,*
    219 Wis. 2d 654, 579 N.W.2d 715 (Wis. 1998) ......................... 29

*Friend v. Valley View Cmty. Unit Sch. Dist. 365U,*
    789 F.3d 707 (7th Cir. 2015) ..................................................... 16

*Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the United States of America, Inc.,*
    549 F.3d 1079 (7th Cir. 2008) ................................................... 27

*Greene v. Doruff,*
    660 F.3d 975 (7th Cir. 2011) ..................................................... 16

*Hartman v. Moore,*
    547 U.S. 250 (2006) ................................................................. 18

*Houston Cmty. Coll. Sys. v. Wilson,*
    595 U.S. 468 (2022) ................................................................. 25

*Human Rights Defense Ctr. v. Sherburne County, Minnesota,*
    2020 WL 7027840 (D. Minn. Nov. 30, 2020) ........................... 25

*Ill. Republican Party v. Pritzker,*
    973 F.3d 760 (7th Cir. 2020) ..................................................... 14

*Indiana C.L. Union v. O'Bannon,*
    259 F.3d 766 (7th Cir. 2001) ..................................................... 28

*Int'l Ass'n of Fire Fighters, Local 365 v. City of East Chicago,*
    56 F.4th 437 (7th Cir. 2022) ..................................................... 26

*Kidwell v. Eisenhauer,*
    679 F.3d 957 (7th Cir. 2012) ................................................ 16, 18

*Lavite v. Dunstan,*
    932 F.3d 1020 (7th Cir. 2019) ................................................... 16

*Life Spine, Inc. v. Aegis Spine, Inc.,*
    8 F.4th 531 (7th Cir. 2021) ....................................................... 13

*Long v. Teachers Ret. Sys. of Ill.*,
  585 F.3d 344 (7th Cir. 2009).................................................... 16

*Lukaszczyk v. Cook County*,
  47 F.4th 587 (7th Cir. 2022) .................................................. 13

*Minocqua Brewing Co. LLC v. Town of Minocqua*,
  2024 WL 1619351 (W.D. Wis. Apr. 15, 2024).................................... 25

*Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*,
  429 U.S. 274 (1977)........................................................... *16*

*Nieves v. Bartlett*,
  587 U.S. 391 (2019)........................................................... 18

*Orr v. Shicker*,
  953 F.3d 490 (7th Cir. 2020).................................................. 14

*Puffer v. Allstate Ins. Co.*,
  675 F.3d 709 (7th Cir. 2012).............................................. 19, 23

*Shaffer v. Globe Protection, Inc.*,
  721 F.2d 1121 (7th Cir. 1983) ................................................ 28

*Simpson v. Beaver Dam Cmty. Hospitals, Inc.*,
  780 F.3d 784 (7th Cir. 2015) ................................................. 24

*Speech First, Inc. v. Killeen*,
  968 F.3d 628 (7th Cir. 2020) ................................................. 13

*Ty, Inc. v. Jones Group, Inc.*,
  237 F.3d 891 (7th Cir. 2001).................................................. 28

*United States v. Dunkel*,
  927 F.2d 955 (7th Cir. 1991) ............................................. 19, 23

*Winter v. Natural Res. Defense Council, Inc.*,
  555 U.S. 7 (2008)............................................................. 14

*Yahnke v. Kane County, Ill.*,
  823 F.3d 1066 (7th Cir. 2016) ................................................ 17

**Statutes**

Wis. Stat. § 59.69(5e)(d) ................................................................................................. 21

# JURISDICTIONAL STATEMENT

The jurisdictional statement of plaintiffs-appellants is complete and correct.

# STATEMENT OF THE ISSUE

Plaintiffs-appellants, the Minocqua Brewing Company LLC and Kirk Bangstad (together, "MBC"), twice sought a preliminary injunction from the district court directing that defendants-respondents, the five current members of the Oneida County, Wisconsin Planning and Development Committee (the "Committee"), grant it a conditional use permit in connection with its operation of a craft brewery retail outlet and outdoor beer garden in the Town of Minocqua, Wisconsin (the "Town" or "Minocqua"). The issue on appeal is whether the district court abused its discretion in denying MBC's second motion for a preliminary injunction.

# STATEMENT OF THE CASE

## A.     Material Facts.

The record underlying the district court's decision denying preliminary injunctive relief to MBC included the material facts set forth below.

### 1.     The Administrative Review Permit Requested by MBC and Issued by the County Planning and Zoning Department.

In August 2021, MBC applied to the County for an administrative review permit ("ARP") to open what was described as a craft brewery retail outlet on MBC's property located at 329 E. Front Street in Minocqua. (R. 14, ¶ 4; R. 14-1.)[1] In March 2022, the County's Planning and Zoning Department (the "Department") granted MBC the requested ARP, which permitted the operation of the craft brewery retail outlet, but

---

[1] Citations to the record below are to "R." followed by the district court docket number and, where appropriate, a page or paragraph number. Citations to the required short appendix filed by MBC in this Court are to "SA" followed by the page number.

prohibited any associated outdoor operations. (R. 14, ¶¶ 7-8; R. 14-3.) When MBC applied for the ARP, it did not seek approval for outdoor operations in connection with the retail outlet, and, under the Oneida County Zoning and Shoreland Protection Ordinance (the "Ordinance"), such outdoor operations are prohibited without a conditional use permit ("CUP"). (R. 14, ¶ 5; R. 14-2, §§ 9.26(A)(3)(b) & (4)(c).)

Nonetheless, having been granted the ARP it requested, and despite the restrictions of the permit and the Ordinance, MBC violated the prohibition on outdoor activities on at least 28 days during the summer of 2022. (R. 14, ¶ 9.) And, once the 2023 summer tourist season was underway, MBC began routinely violating the ARP again, engaging in outdoor operations in connection with the retail outlet on at least 59 days between May 12 and July 31, 2023. (*Id.*, ¶ 10.) At the outset of the season, MBC, through Bangstad, even sent an email to the County acknowledging that it would be violating the ARP in connection with an event planned for the end of May 2023. (*Id.*, ¶ 11.)

Based on MBC's open and ongoing violations of the ARP for two consecutive summer seasons, the Committee held a public hearing on August 2, 2023, for the purpose of considering the potential suspension or revocation of the ARP. (*Id.*, ¶ 12.) At the conclusion of the hearing, the Committee voted to revoke the ARP "[b]ased on the evidence of past and ongoing violations of [the] ARP … made part of the hearing record, including but not limited to violations of permit condition #6 specifying that 'no outdoor sales, displays, storage, or activities of any type are allowed.'" (*Id.*; R. 14-5.)

Despite being on notice of the revocation of the ARP, MBC continued to operate the retail outlet between August 3 and 8, 2023. (R. 14, ¶ 13.) On August 9, 2023, MBC appealed the revocation of the ARP to the Oneida County Board of Adjustment (the "Board of Adjustment"), which, under the Ordinance, stayed the revocation of the permit

during the appeal. (*Id.*) Nonetheless, even during the appeal, MBC continued to violate the terms of the ARP by engaging in outdoor activities in connection with the retail outlet during the remainder of the 2023 summer tourist season. (*Id.*)

        **2.**      **The Conditional Review Permit Requested by MBC and Issued by the Committee.**

In November 2022, MBC submitted an initial application for a conditional use permit to add an outdoor beer garden to the existing craft brewery retail outlet. (*Id.*, ¶ 14.) The CUP application was not complete until February 24, 2023. (*Id.*, ¶ 15.) As submitted, the application proposed adding five parking spaces, space for a garbage dumpster, and a driveway on land owned not by MBC but by the Town located between the retail outlet and U.S. Highway 51. (*Id.*; R. 14-6.)

After the CUP application was complete, and pursuant to the Ordinance, the application was forwarded to the Town for an advisory recommendation. (R. 14, ¶ 16.) The Town recommended denial of the application because MBC did not have its permission to use its land in connection with the proposed beer garden. (*Id.*; R. 14-7.) On April 19, 2023, the Committee held a public hearing on the CUP application and voted to deny the CUP, as proposed, based, among other things, on the fact that aspects of the proposed beer garden would have used land that MBC did not own or have permission to use. (R. 14, ¶ 17; R. 14-8.) MBC could have appealed this decision to the Board of Adjustment, but it did not do so. (R. 14, ¶ 18.)

Instead, on May 10, 2023, MBC submitted a revised CUP application, again seeking to add an outdoor beer garden to the existing retail outlet. (*Id.*, ¶ 19; R. 14-9.) The Committee held a public hearing regarding the revised application on August 2, 2023, initially tabling consideration of the application. (R. 14, ¶ 19.) Following the August 2,

2023, hearing before the Committee, MBC submitted three alternate site plans in support of its revised application for a CUP. (*Id.*, ¶ 20.)

One of these alternate site plans—"Option 3"—proposed, among other things, each of the following in connection with the requested addition of the beer garden to the existing retail outlet: (1) six parking spaces (two spaces between the building housing the existing retail outlet and E. Front Street, three spaces on the east edge of the subject property, immediately to the west of the property owned by the Town, and one space at the south end of the proposed beer garden); (2) a 4' tall decorative metal fence along the east edge of the proposed beer garden; (3) curbs along the edge of the driveway and parking areas; and (4) that access to the driveway and parking areas for the retail outlet and beer garden would come from U.S. Highway 51 via a driveway crossing over the Town-owned land. (*Id.*, ¶ 21, R. 14-10.) The revised CUP application also incorporated MBC's previously-submitted stormwater management plan, which contemplated that the driveway and parking areas on the property would be paved. (R. 14, ¶ 22; R. 14-9, 14-11.) In addition, MBC submitted a memorandum from an engineering firm stating that the previously-submitted stormwater management plan would be adequate for the proposed beer garden if, among other things, the seating area of the beer garden was constructed of permeable pavers rather than compressed gravel. (R. 14, ¶ 22; R. 14-12.) Most of these elements proposed by MBC were eventually incorporated into the CUP granted by the County as conditions that MBC now claims, after-the-fact, were unduly burdensome or selectively imposed.

On October 4, 2023, the Committee approved the CUP based on the alternate site plan designated as Option 3, with certain modifications and subject to various conditions discussed and approved by the Committee consistent with the Ordinance and state law.

(R. 14, ¶ 23; R. 14-13.) The Department issued the CUP on October 6, 2023. (R. 14, ¶ 24; R. 14-14.) Among the conditions incorporated into the permit were conditions relating to: (1) access to the driveway and parking areas from Highway 51; (2) one-way traffic flow, with ingress off of Highway 51 and egress onto E. Front Street; (3) five parking spaces delineated with pavement marking; (4) compliance with the previously submitted storm-water management plan which included the use of pervious pavers in the beer garden; and (6) an agreement between MBC and the Town allowing access to the driveway and parking areas from U.S. Highway 51 across the Town-owned land. (R. 14, ¶ 24; R. 14-14.) The final condition approved by the Committee and incorporated into the permit was the requirement that "[a]ll conditions set forth in this permit shall be met prior to allowing outdoor seating or allowing any outdoor activities." (R. 14, ¶ 24.)

Had MBC disagreed with any of the conditions approved by the Committee and incorporated into the CUP or any other aspect of the permit or its approval by the Committee, it had a right under the Ordinance to appeal to the Board of Adjustment. MBC did not file such an appeal. (*Id.*, ¶ 26.)

MBC opened the beer garden as soon as the 2024 summer tourist season began. However, when MBC opened the beer garden, it had not complied with all of the conditions approved by the Committee and incorporated into the CUP. (*Id.*, ¶ 27.) At a minimum, MBC opened the beer garden without: (1) obtaining a zoning permit for the beer garden and the surrounding fence; (2) completing the construction of the driveway access from U.S. Highway 51 consistent with Wisconsin Department of Transportation requirements; (3) providing for proper signage and pavement markings to ensure one-way traffic flow on the property; (4) providing for the five required paved and marked parking spaces; (5) paving the driveway area; (6) constructing the seating area for the beer garden

from pervious pavers; and (7) properly locating and screening the garbage dumpster. (*Id.*)
In fact, MBC operated the beer garden in violation of the terms of the CUP on at least 21
days between May 24 and June 19, 2024. (*Id.*, ¶ 28.)

Due to the open and ongoing violations, the Committee held a public hearing on
June 20, 2024, for the purpose of considering whether to suspend or revoke the CUP. (*Id.*,
¶ 29.) Bangstad did not seek approval from the Committee at any time between the issu-
ance of the CUP and the public hearing to modify any of the conditions of the permit or
to otherwise allow him to open the beer garden without first complying with all of the
conditions. (*Id.*)

An attorney for MBC was present at the hearing and did not contest that MBC had
failed to comply with the CUP by operating the beer garden without first satisfying all of
the conditions of the permit. When asked why MBC had opened the beer garden without
first seeking approval from the Committee to modify the conditions or to otherwise oper-
ate without first complying with all of the conditions, MBC's attorney stated: "I think that
would have probably, having seen maybe – oh, this one might have been the better choice
to be sure. But that isn't where we're at." (*Id.*, ¶¶ 30-31.) Later in the hearing, when MBC's
attorney was asked if MBC would cease outdoor operations until it was in compliance with
the conditions of the CUP (as required by the permit), the attorney reported that MBC
would only commit to fulfilling all of the conditions of the permit by October, after the
summer tourist season was over. (*Id.*, ¶ 33.)

At the conclusion of the public hearing, and based on the violations of the CUP, the
Committee voted to suspend the permit as it related to the outdoor beer garden for ninety
days, with the suspension subject to being lifted sooner if MBC came into compliance with
the conditions of the permit. (*Id.*, ¶ 34; R. 14-15 at 2.) The decision of the Committee to

suspend the CUP was communicated in writing to MBC by letter dated June 26, 2024. (R. 14, ¶ 35; R. 14-17.) MBC had the right to appeal the suspension of the CUP to the Board of Adjustment, but it did not file an appeal. (R. 14, ¶ 35.)

MBC ignored the suspension of the CUP and continued to operate the beer garden without satisfying all of the conditions of the permit. (*Id.*, ¶ 36.) In fact, Department staff observed the beer garden to be open on at least 29 days between June 20 and July 18, 2024. (*Id.*) As a result, on July 24, 2024, the Committee held a public hearing to address MBC's ongoing operation of the beer garden following the suspension of the permit and to consider whether to revoke the permit pursuant to § 9.82(D) of the Ordinance. (*Id.*, ¶ 37.) Bangstad did not appear,[2] but his counsel did not contest that MBC had kept the beer garden open after the suspension. (*Id.*, ¶ 38.) Based on the past and ongoing violations of the CUP and MBC's defiance of the CUP suspension, the Committee voted to revoke the permit in its entirety at the conclusion of the hearing. (*Id.*, ¶ 41; R. 14-18.)

### 3. MBC's Efforts to Avoid the CUP Revocation.

Due to MBC's ongoing and repeated violations of the ARP, on April 12, 2024, the County filed suit in the Oneida County Circuit Court against MBC seeking the imposition of forfeitures pursuant to § 9.82(B) of the Ordinance. On June 4, 2024, the County filed an amended complaint seeking additional forfeitures for violations of the CUP and requesting injunctive relief prohibiting operation of the beer garden in violation of the CUP. (R. 14, ¶ 42; R. 14-20.) In advance of the July 24, 2024, Committee hearing, MBC moved for a preliminary injunction to prohibit the County from revoking the CUP based on the

---

[2] MBC misstates the record in asserting that Bangstad was not permitted to speak during the July 24, 2024 hearing. (R. 14, ¶ 38; R. 14-18, 14-19.)

same arguments it now makes in this lawsuit. (R. 14, ¶ 43; R. 14-21.) The circuit court denied MBC's motion. (R. 14, ¶ 43; R. 14-22.)

On July 24, 2024, MBC filed what it called a "pre-appeal *ex parte* emergency motion for relief" with the Wisconsin Court of Appeals from the circuit court's oral ruling denying the injunction. (R. 14, ¶ 44.) The Wisconsin Court of Appeals initially issued an order setting a schedule for MBC to file a petition for leave to appeal and an associated briefing schedule and ordering the County not to enforce the revocation of the CUP pending further order of the court. (*Id.*; R. 14-23.) On September 17, 2024, the Wisconsin Court of Appeals issued an order denying the petition for leave to appeal and lifting the stay issued on July 25, 2024. (R. 14, ¶ 45; R. 14-25.)

The forfeiture case remains pending in Oneida County Circuit Court. (R. 14, ¶ 46.) In June 2025, the County filed a second action in the Oneida County Circuit Court seeking forfeitures for MBC's continued operation without a valid permit in 2025 and seeking an injunction requiring MBC to cease operating unless and until it obtains a valid permit. MBC improperly attempted to remove the second forfeiture action to federal court. (W.D. Wis. Case No. 25-cv-520, Dkt. Nos. 1, 1-3, 2, 14, 20.)

On September 23, 2024, after the Court of Appeals denied MBC's petition for leave to appeal, the Department issued a letter confirming the Committee's revocation of the CUP. (R. 14, ¶ 47; R. 14-26.) MBC then appealed the revocation to the Board of Adjustment. (R. 14, ¶ 48.) After a hearing on February 20, 2025, the Board of Adjustment voted to deny the appeal and affirm the revocation of the permit. (*Id.*, ¶ 49; R. 14-27.) MBC filed an action in the Oneida County Circuit Court challenging the Board of Adjustment's decision to uphold the revocation of the CUP, but the court in that action recently ordered

that the case be dismissed as having been untimely filed. (R. 14, ¶ 50; Oneida County Circuit Court Case No. 2025-CV-000066.)[3]

More recently, MBC filed yet another action in the Oneida County Circuit Court arising from its zoning disputes with the County. (Oneida County Circuit Court Case No. 2025-CV-000123.)[4]

### 4. MBC's Operation Without a Permit in 2025 and Its Application for a New Permit.

In 2025, MBC has had neither an ARP nor a CUP. Nonetheless, MBC has continued open the retail outlet and the beer garden without a permit, thereby violating the Ordinance. MBC did so on May 1 through 4, 2025, again on May 8 through 11, 2025, and again on May 15 through 18, 2025, and MBC has been open continuously since May 22, 2025. (R. 14, ¶ 53; R. 14-30; R. 24, ¶ 79; SA 28, ¶ 79.)[5]

Following the Board of Adjustment's decision denying its appeal and affirming the revocation of the CUP, MBC filed a new application for a CUP allowing it to operate a craft brewery retail outlet and beer garden on the property at 329 E. Front Street in Minocqua. (R. 14, ¶ 51; R. 14-29.) The 2025 CUP application, which was in all relevant respects identical to the previously-issued and revoked CUP, was complete as of April 7, 2025. (R. 14, ¶ 51.) Consistent with the Ordinance, the application was forwarded to the Town for its advisory recommendation, and the Committee held a public hearing on June 11, 2025, to consider the application. (*Id.*, ¶ 52.) On the day of the hearing, Bangstad posted on social

---

[3] The court docket for the case is publicly available at https://wcca.wicourts.gov/caseDetail.html?caseNo=2025CV000066&countyNo=43 (last accessed on August 1, 2025).

[4] The court docket for the case is publicly available at https://wcca.wicourts.gov/caseDetail.html?caseNo=2025CV000123&countyNo=43 (last accessed on August 1, 2025).

[5] The district court denied MBC's second motion for a preliminary injunction without requiring the Committee to respond. (R. 32; SA 1-4.) As a result, certain facts discussed herein are drawn from the allegations of MBC's amended complaint (R. 24; SA 13-32) or from a declaration accompanying MBC's second motion (R. 29; SA 70-74).

media that MBC would continue to operate without a permit regardless of whether the Committee granted MBC's application for a new permit. (R. 29, ¶ 20; SA 73, ¶ 20.)

At the June 11 public hearing, the Committee voted to deny MBC's application for a new permit based in its repeated violations of its ARP, its repeated violations of its CUP, including following its suspension and its revocation, and its continued operation in 2025 without a valid permit. (R. 29, ¶¶ 24-26; SA 73-74, ¶¶ 24-26.) During the Committee's deliberations, Committee member Scott Holewinski stated:

> So this isn't about parking spaces or fencing or traffic markings. That all can be handled in conditions of the CUP. This is about an applicant refusing to follow specific conditions in the past and violating every permit he had for the past three plus years. In fact, he is currently violating a known permit right now. And this morning he, Mr. Bangstad put on social media that no matter what happens today, he will be open anyway. So it just shows that he doesn't follow the rules. He doesn't.

(R. 29, ¶ 26; SA 74, ¶ 26.)

**B.    The Procedural History Below and the District Court's Rulings.**

MBC filed its original complaint against the Committee on April 26, 2025. (R. 1.) The Committee moved to dismiss MBC's original complaint, and, rather than opposing the motion, MBC filed an amended complaint on June 12, 2025. (R. 17, 24; SA 13-32.) In its amended complaint, MBC asserts a single claim against the Committee pursuant to 42 U.S.C. § 1983 for alleged retaliation in violation of the First Amendment. (R. 24, ¶¶ 84-93; SA 29-30,¶¶ 84-93.) MBC seeks compensatory damages and injunctive relief. (R. 24, ¶¶ 94-101, Prayer for Relief; SA 31-32, ¶¶ 94-101, Prayer for Relief.) The Committee has moved to dismiss the amended complaint for failure to state a claim or, in the alternative, to stay or dismiss the case on abstention grounds. (R. 34-35.)

MBC first filed a motion seeking a preliminary injunction on April 26, 2025. (R. 2.) The district court denied the motion on June 3, 2025 on the grounds that MBC had not

demonstrated a likelihood of success on the merits of its claim for First Amendment retaliation. (R. 23; SA 8-12.) Having amended its complaint, MBC filed a second motion for a preliminary injunction on June 18, 2025. (R. 26; SA 33-34.) On June 24, 2025, the district court denied MBC's second motion for a preliminary injunction on the same grounds as its first without requiring a response from the Committee. (R. 32; SA 1-4.) This appeal followed.

## SUMMARY OF ARGUMENT

Over the past four years, MBC has requested at least three separate permits from Oneida County to open and operate a craft brewery retail outlet and an outdoor beer garden in downtown Minocqua. The County granted the first two permits: first, at MBC's request, the Department issued an administrative review permit allowing MBC to operate the retail outlet; and then, at MBC's later request, the Committee issued a conditional use permit allowing MBC to add an outdoor beer garden to the retail outlet. The conditional use permit set forth a number of conditions that MBC was required to satisfy before opening the beer garden, conditions that tracked what MBC itself had proposed to the County in its permit application.

Having received both the administrative review and the conditional use permits it requested, MBC proceeded to openly and continuously violate the permits. First, MBC violated the administrative review permit by engaging in outdoor operations in connection with the retail outlet despite the fact that such outdoor operations were expressly prohibited by the permit and the applicable zoning ordinance. Then, MBC violated the conditional use permit by operating the outdoor beer garden without first satisfying the conditions set forth in the permit even though the permit expressly required MBC to complete all of the conditions before opening the beer garden.

The Committee responded to MBC's failure to abide by the terms of the permits it had requested in a measured and lawful way—by warning MBC it was violating the permits, by holding public hearings to consider what steps, if any, to take in light of the violations, by seeking to obtain MBC's compliance through interim steps such as a temporary suspension of the conditional use permit only as to the outdoor beer garden, and, when all else failed, by revoking the permits and denying MBC's most recent—it's third—request for a new permit.

Rather than simply abiding by the permits it sought from the County, MBC's only response has been to ask a series of courts—first, the Oneida County Circuit Court, then the Wisconsin Court of Appeals, then the district court, and now this Court—to either give it permission to operate in a manner that the permits did not allow or, as in this case, to reinstate a permit taken away based only on its own failure to conform to the permit's requirements. And MBC's serial requests to the courts are all based on a theory of First Amendment retaliation that finds no support in the facts of what has occurred over the past four years.

MBC's motions for a preliminary injunction were properly denied by the district court, and it did not abuse its discretion in doing so. First and foremost, injunctive relief was properly denied because MBC failed to show a connection between any protected First Amendment activities on its part and the revocation of the conditional use permit and the denial of a new permit. The full record demonstrates that the conditional use permit was revoked and a new permit was denied only because of MBC's failure to abide by the prior permit's express terms and by its continued operation without a valid permit. As a result, the district court properly concluded that MBC has no likelihood of success on the merits of its First Amendment retaliation claim. Moreover, although the district

court did not reach any other issue under the applicable preliminary injunction standard, MBC also cannot demonstrate that it will suffer irreparable harm in the absence of a preliminary injunction, and the issuance of the preliminary injunction it seeks would be harmful to the public because it would bless MBC's years-long efforts to ignore and evade generally applicable zoning requirements and the permits granted at its request.

The district court did not abuse its discretion in denying MBC's motion for a preliminary injunction, and its decision denying the injunction should be affirmed.

## STANDARD OF REVIEW

This Court reviews a district court's denial of an injunction for an abuse of discretion. *Lukaszczyk v. Cook County*, 47 F.4th 587, 598 (7th Cir. 2022); *DM Trans, LLC v. Scott*, 38 F.4th 608, 617 (7th Cir. 2022); *3M v. Pribyl*, 259 F.3d 587, 597 (7th Cir. 2001). More specifically, this Court reviews "a district court's denial of injunctive relief for abuse of discretion, its factual determinations for clear error, and its legal conclusions de novo, and [it] give[s] deference to the court's balancing of equitable factors." *EEOC v. Wal-Mart Stores East, L.P.*, 113 F.4th 777, 791 (7th Cir. 2024) (citing *EEOC v. Wal-Mart Stores, Inc.*, 38 F.4th 651, 661 (7th Cir. 2022)). A clear error of fact or an error of law may establish an abuse of discretion. *Lukaszczyk*, 47 F.4th at 598; *Cassell v. Snyders*, 990 F.3d 539, 545 (7th Cir. 2021); *EEOC v. Wal-Mart Stores, Inc.*, 38 F.4th at 661. However, an "abuse of discretion means something more than our belief that we would have acted differently if placed in the circumstance confronting the district judge." *EEOC v. Wal-Mart Stores, Inc.*, 38 F.4th at 661 (internal quotation marks and citation omitted); *see also Life Spine, Inc. v. Aegis Spine, Inc.*, 8 F.4th 531, 539 (7th Cir. 2021) ("Absent legal or factual errors, we afford great deference to the court's decision.") (internal quotation marks and citation omitted); *Speech First, Inc. v. Killeen*, 968 F.3d 628, 638 (7th Cir. 2020) ("We will not

reverse a district court's grant or denial of a preliminary injunction absent a clear abuse of discretion by the district court.") (internal quotation marks and citation omitted).

A preliminary injunction is "an exercise of a very far-reaching power, never to be indulged in except in a case clearly demanding it." *Orr v. Shicker*, 953 F.3d 490, 501 (7th Cir. 2020) (citation omitted). "Parties seeking a preliminary injunction must demonstrate not only likely success on the merits but also that they will suffer irreparable harm if preliminary relief is denied." *Cassell*, 990 F.3d at 545 (citing *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir. 1992)). A movant must make a "strong showing" that they are likely to succeed on the merits of their claims. *Ill. Republican Party v. Pritzker*, 973 F.3d 760, 762 (7th Cir. 2020). While this does not mean a moving party must prove their claims by a preponderance of the evidence at the preliminary injunction stage, a movant must still be able to show how they propose to prove the key elements of the claims. *Id.* at 763. Further, a possibility of irreparable harm is not sufficient; instead, a moving party must show that irreparable harm is likely. *Winter v. Natural Res. Defense Council, Inc.*, 555 U.S. 7, 22 (2008). Irreparable harm "must also be balanced against any harm to the non-moving party and the public interest, which refers to the interests of people and institutions that are not parties to the case." *Cassell*, 990 F.3d at 545 (internal quotations and citation omitted).

Courts in this circuit engage in a two-step analysis to determine if a preliminary injunction is warranted. First, "[a]s a threshold matter, a party seeking a preliminary injunction must demonstrate (1) some likelihood of succeeding on the merits, and (2) that it has 'no adequate remedy at law' and will suffer 'irreparable harm' if preliminary relief is denied." *Id.* (citing *Abbott Labs.*, 971 F.2d at 11). If a movant meets these threshold factors, "the court proceeds to a balancing phase ... where it must then consider: (3) the

irreparable harm the non-moving party will suffer if preliminary relief is granted, balancing that harm against the irreparable harm to the moving party if relief is denied; and (4) the public interest, meaning the consequences of granting or denying the injunction to non-parties." *Id.* at 544-45 (cleaned up).

## ARGUMENT

The district court did not abuse its discretion in denying MBC's motion for preliminary injunctive relief. The district court was correct in concluding that MBC failed to demonstrate a sufficient likelihood of success on its First Amendment retaliation claim. In addition, although the district court did not reach any other aspects of the preliminary injunction standard, MBC also was not entitled to an injunction based on its inability to demonstrate that it would suffer irreparable harm in the absence of an injunction and based on a balancing of the harms.

### A.    MBC Failed to Demonstrate a Likelihood of Success on the Merits.

The district court did not abuse its discretion in determining that MBC had failed to demonstrate a sufficient likelihood of success on the merits of its First Amendment retaliation claim.

#### 1.    The Applicable First Amendment Standard.

To prevail on such a claim, a plaintiff must show "(1) [he] engaged in a protected First Amendment activity; (2) [he] 'suffered a deprivation that would likely deter First Amendment activity in the future'; and (3) causation—specifically, 'the First Amendment activity was 'at least a motivating factor' in the Defendants' decision to take the retaliatory action.'" *FKFJ, Inc. v. Vill. of Worth*, 11 F.4th 574, 585 (7th Cir. 2021) (quoting *Douglas v. Reeves,* 964 F.3d 643, 646 (7th Cir. 2020)). "These basic elements are the same whether

the plaintiff is a prisoner, a public employee, or any other person alleging that a government official targeted protected activity." *Douglas,* 964 F.3d at 646. Each of the three separate elements must be satisfied to prove a retaliation claim. *Lavite v. Dunstan*, 932 F.3d 1020, 1031 (7th Cir. 2019); *Friend v. Valley View Cmty. Unit Sch. Dist. 365U*, 789 F.3d 707, 712 (7th Cir. 2015).

A plaintiff can satisfy the causation element of a First Amendment retaliation claim using either direct or circumstantial evidence. *Kidwell v. Eisenhauer*, 679 F.3d 957, 965 (7th Cir. 2012). Such circumstantial evidence may be evidence of "suspicious timing, ambiguous oral or written statements, or behavior towards or comments directed at other[person] in the protected group." *Id.* at 966 (quoting *Long v. Teachers Ret. Sys. of Ill.*, 585 F.3d 344, 350 (7th Cir. 2009)). Timing, alone, however, is generally not sufficient to establish causation. *Id.* (citing *Culver v. Gorman & Co.*, 416 F.3d 540, 546 (7th Cir. 2005)). Further, an inference of causation premised on suspicious timing is not reasonable when there is a "significant intervening event" between the protected speech and the adverse action. *Id.* at 967.

Assuming that a plaintiff can establish that the protected speech was "a motivating factor" for the adverse action in question (a "sufficient condition" of the adverse action, as the Seventh Circuit has described it), the defendant then bears the burden of demonstrating that the adverse action would have occurred even in the absence of the protected speech (*i.e.*, that the protected speech was not a "necessary" condition of the adverse action). *Greene v. Doruff*, 660 F.3d 975, 979-80 (7th Cir. 2011) (discussing the burden-shifting analysis articulated in *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977)). And, if the defendant offers a non-retaliatory explanation for the adverse action, the burden returns to the plaintiff to demonstrate that the proffered reason or

reasons are mere pretext: in other words, that they are "unworthy of credence 'by providing evidence tending to prove that the ... proffered reasons are factually baseless, were not the actual motivation for the [action] in question, or were insufficient to motivate' the ... action." *Yahnke v. Kane County, Ill.*, 823 F.3d 1066, 1070 (7th Cir. 2016) (quoting *Carter v. Chi. State Univ.*, 778 F.3d 651, 659 (7th Cir. 2015)).

### 2.   The District Court Did Not Require MBC to Satisfy an Incorrect Standard.

The district court correctly concluded that MBC failed to show the required causal connection between the protected speech of Bangstad, its owner, and the Committee's decisions to revoke MBC's CUP and to deny it a new permit. On appeal, MBC makes much of the district court's description of the causation element, arguing that court demanded it satisfy a more stringent requirement than called for under applicable case law. (*See* MBC Br. at 10-11, 12-13.) Specifically, MBC points to the district court's statement that "[a] First Amendment retaliation claim requires proof that the defendant took an adverse act against the plaintiff because of the plaintiff's speech." (R. 32 at 1-2 (citing *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009)); SA 1-2.) Plaintiff's arguments on this point are unpersuasive for a number of reasons.

First, and most obviously, the district court's general description of the cause element seized on by MBC was just that—a general description of the fact that MBC, as the plaintiff, bears the burden of demonstrating a causal connection between the protected speech of Bangstad and an adverse action taken by the Committee. (*See* R. 32 at 2 ("plaintiffs' failure to show a causal connection between their speech and the permit revocation required denial of their motion for a preliminary injunction"); SA 2.) This is no different than what both the Supreme Court and this Court have said in describing this element of

the test for establishing unlawful First Amendment retaliation. *See*, *e.g.*, *Nieves v. Bart-lett*, 587 U.S. 391, 398 (2019) ("To prevail on such a [First Amendment retaliation] claim, a plaintiff must establish a *causal connection* between the government defendant's retaliatory animus and the plaintiff's subsequent injury.") (citing *Hartman v. Moore*, 547 U.S. 250, 259 (2006)) (emphasis added; internal quotation marks omitted); *Kidwell*, 679 F.3d at 964 (describing test in context of public employee's retaliation claim as requiring "the plaintiff to demonstrate a *causal link* between his protected speech and the employer's actions") (emphasis added); *Deeren v. Anderson*, 72 F.4th 229, 236 (7th Cir. 2023) (concluding that "[n]o reasonable juror could find a *causal link* between [plaintiff's] speech and the termination recommendation") (emphasis added). Indeed, as this Court has expressly noted, that is in fact a plaintiff's ultimate burden in a First Amendment retaliation case, notwithstanding the burden-shifting analysis used to assess that ultimate question: "In the end, the plaintiff must demonstrate that, but for his protected speech, the [government] would not have taken the adverse action." *Kidwell*, 679 F.3d at 965.

Second, even a cursory review of the district court's decision reveals that the court understood and correctly applied the proper standard with respect to the cause element. For instance, the district court discussed the evidence submitted by MBC in support of its second motion for a preliminary injunction, looking to see if MBC offered any evidence showing a "retaliatory intent" or a "retaliatory reason" for the Committee's actions. (R. 32 at 2-4; SA 2-4.) In turn, the district court discussed whether the reason offered by the Committee for its denial of a new CUP to MBC was pretext for retaliation. (R. 32 at 3; SA 3.) This analytical framework is identical to that employed by the district court in denying MBC's first injunction motion, a decision that MBC did not seek to have the district court reconsider or challenge via an appeal to this Court (*see* R. 23 at 3-5; SA 10-12) and that is

fully consistent with the burden-shifting analysis applicable under controlling First Amendment case law.

### 3. Regardless, MBC Did Not Establish a Causal Connection Between MBC's Speech and the Committee's Actions.

#### a. MBC's Speech Was Not a Motivating Factor in the Committee's Decisions.

Regardless, the record before the district court does not support the conclusion that there was *any* causal connection between protected speech by MBC through Bangstad and the Committee's July 2024 decision to revoke MBC's conditional use permit or its more recent decision to deny MBC a new permit. MBC does no more than offer a two sentence conclusion that Bangstad's speech was a motivating factor in the Committee's actions, evidently expecting this Court to sort through its prior factual recitation to identify the evidence supporting this conclusion. (*See* MBC Br. at 25, 2nd para.) Such undeveloped, conclusory arguments are ordinarily deemed by this Court as having been waived. *See*, *e.g.*, *Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 718 (7th Cir. 2012) ("Moreover, even arguments that have been raised may still be waived on appeal if they are underdeveloped, conclusory, or unsupported by law."); *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("A skeletal 'argument,' really nothing more than an assertion, does not preserve a claim.").  As the district court correctly concluded, the evidence offered below by MBC fell well short of substantiating a causal connection in any event.

As the district court correctly concluded in its initial decision denying a preliminary injunction to MBC, evidence relating to speech and conduct by officials *other than the Committee*, including members of the Minocqua board, does nothing to show why *the Committee* revoked MBC's conditional use permit and denied it a new permit. (R. 23 at 3; SA 10.) This certainly applies to MBC's references to comments by Town officials (MBC

Br. at 3, 16), the 2021 email sent by the then-outgoing County attorney to County representatives other than the Committee (*id.* at 3, 15), the 2020 enforcement letter sent by the Planning and Zoning Director to Bangstad regarding the size of a sign on an MBC property (*id.* at 2, 14), the conditions of the administrative review permit issued by the Department, not the Committee (*id.* at 4, 16), the length of time it took the Department to issue the permit (*id.* at 17), and the Board of Adjustment's decision to affirm the revocation of the CUP (*id.* at 7, 23).

As the district court also correctly concluded in its initial preliminary injunction denial, the evidence offered by MBC regarding the enforcement and revocation of the ARP in 2023 (*id.* at 5, 6, 17-18) is "weak evidence" that the Committee had a retaliatory motive for revoking the subsequent conditional use permit. (R. 23 at 3-4; SA 10-11.) In fact, there is substantial evidence in the record that MBC repeatedly violated the conditions of its ARP by engaging in outdoor operations in connection with its retail outlet even though such outdoor operations were expressly prohibited by the permit. (R. 14, ¶¶ 9-13; R. 14-5.) Further, MBC offers no evidence that other, similarly-situated business violated their ARPs for similar reasons yet were not similarly penalized by the Committee. And, as the district court recognized, "[e]ven if it would be reasonable to infer that the committee placed unreasonable conditions on plaintiffs' administrative review permit because of Bangstad's political speech, it would not follow that defendants revoked plaintiffs' conditional use permit because of Bangstad's speech." (R. 23 at 4; SA 11.)

The analysis and conclusion are no different with respect to the two Committee decisions regarding the conditional use permit sought by MBC by way of a preliminary injunction—the July 2024 revocation of the CUP and the June 2025 denial of a new permit. First, despite its current arguments (*see* MBC Br. at 6, 20), the evidence below did

not support the premise that the conditions of the CUP were unduly restrictive or selective. In fact, the conditions of the permit largely matched the details of the proposed use laid out in MBC's permit application. (R. 14, ¶¶ 21-24; R. 14-10, 14-11, 14-12, 14-14.) MBC did not challenge the conditions of the permit at the time it was issued (R. 14, ¶ 26), and it presented no evidence regarding other similarly-situated businesses that were issued CUPs without similar conditions.[6]

Second, as the district court correctly concluded, it is undisputed that MBC began violating its conditional use permit as soon as it opened in Spring 2024 and continued to do so up through the Board of Adjustment's decision to uphold the revocation of the permit in early 2025. (R. 23 at 3; SA 10; *see also* R. 14, ¶¶ 27-31, 33, 36, 38.) As the district court also properly recognized, MBC offered no evidence that other, similarly situated businesses were allowed to keep their permits despite multiple permit violations. (R. 23 at 3; SA 10.) Revocation of a conditional use permit is in fact the natural consequence of a permit holder failing to comply with the conditions of the permit. *See* Wis. Stat. § 59.69(5e)(d). After all, MBC is not entitled to "claim special protection from governmental regulations of general applicability simply by virtue of their First Amendment protected activities." *Arcara v. Cloud Books, Inc.*, 478 U.S. 697, 705 (1986).

Third, with respect to the Committee's decision to deny a new permit to MBC earlier this summer, there is, again, no dispute that MBC has been operating without a valid permit and in violation of the Ordinance since the beginning of this year's summer tourist season. (R. 14, ¶ 53; R. 14-30.) MBC essentially admits as much in the operative complaint, as it alleges that Bangstad declared publicly the day of the Committee hearing to

---

[6] MBC does not even assert that the CUP conditions were unfairly restrictive or selective in the operative complaint. (R. 24, ¶¶ 50-73.)

consider MBC's new permit application that MBC intended to stay open regardless of whether the Committee granted it a permit. (R. 24, ¶ 79; SA 28, ¶ 79.) And, finally, MBC's own allegations demonstrate that the Committee's decision to deny it a new permit was based on MBC's past permit violations and its ongoing operation without a permit in violation of the Ordinance. (R. 24, ¶¶ 81-82; R. 29, ¶ 26; SA 29, ¶¶ 81-82; SA 74, ¶ 26.) As the district court correctly noted in connection with the reasoning expressed by Committee Chair Scott Holewinski: "[His] quoted statement says nothing about criticism of local officials. Rather, the statement accuses plaintiffs of repeatedly violating permit conditions and disregarding the committee's decisions. This is not a retaliatory reason for denying plaintiffs' permit application." (R. 32 at 3; SA 3.)

Given the undisputed evidence in the record before the district court, the court did not abuse its discretion in concluding that MBC had failed to demonstrate that any protected speech by Bangstad was a motivating factor in the Committee's decisions to revoke MBC's conditional use permit and its decision to deny a new permit to MBC. On appeal, MBC has presented nothing to warrant disturbing the district court's decision in this respect.

> **b.** **Regardless, the Committee Had a Non-Retaliatory Basis For Its Decisions, and MBC Cannot Show That the Reasons Are Pretext.**

Regardless, the record below demonstrated that the Committee had legitimate, non-retaliatory reasons for its decisions to revoke the original permit and deny a new permit, and MBC has failed altogether to show those reasons were pretext.

As with its initial arguments on the causation issue, MBC offers nothing but conclusory, undeveloped assertions on these two elements of the burden-shifting analysis. In fact, MBC does nothing other than to cite generally to its motion and portions of its

preliminary injunction brief below in support of its argument that the CUP would not have been revoked and a new permit denied but for protected speech by Bangstad, and it cites to *nothing* in support of the assertion that it has met its burden of demonstrating pretext. (*See* MBC's Br. at 26-27.) As noted above, such conclusory, undeveloped arguments amount to waiver. *See*, *e.g.*, *Puffer*, 675 F.3d at 718; *Dunkel*, 927 F.2d at 956.

In any event, the undisputed record demonstrates that the Committee suspended and revoked MBC's conditional use permit and then denied a new permit to MBC based on the fact that MBC has been operating since the beginning of the 2024 summer tourist season in violation of the CUP conditions, in violation of the suspension of the permit, and without a valid permit in violation of the Ordinance. (R. 14, ¶¶ 27-31, 33-38, 41, 53; R. 14-15, 14-17, 14-18, 14-30; R. 29, ¶¶ 24-26; SA 73-74, ¶¶ 24-26.) In fact, as the district court correctly concluded, the undisputed record demonstrates that MBC *admitted* that it operated in violation of the CUP conditions throughout the 2024 summer tourist season. (R. 23 at 3, 4; SA 10, 11; *see also* MBC Br. at 6-7, 21-22 (admitting the MBC had not satisfied all the required conditions despite the beer garden being open).) Likewise, MBC's own allegations in support of its claim and its motion for an injunction established that it has been open without a permit in 2025 and that it never intends to close, whether or not it has a valid permit from the Committee. (R. 29, ¶¶ 24-26; SA 73-74, ¶¶ 24-26.) As the district court further correctly concluded, MBC submitted no evidence challenging the Committee's conclusion in denying a new permit that MBC had repeatedly violated its permit conditions and disregarded the Committee's decisions. (R. 32 at 3; SA 3.) Thus, the record below persuasively demonstrates that the Committee had legitimate, non-retaliatory reasons for revoking the CUP originally granted to MBC and for denying a new

permit to MBC, a conclusion the district court properly reached in denying an injunction to MBC. (R. 32 at 3; R. 23 at 5; SA 3, 12.)

Moreover, the record contains no proof of pretext. As the district court repeatedly noted, MBC presented no evidence that other similarly-situated businesses were treated differently than MBC. Most importantly in this respect, the district court concluded that MBC had presented no evidence of "similarly situated businesses that were allowed to keep their permits despite multiple violations" or that "defendants have been more forgiving of other businesses with a similar history of permit violations." (R. 23 at 3; R. 32 at 3; SA 3, 10.) MBC does not challenge those conclusions on appeal, at least not with anything beyond its own conclusory assertion of error. (*See* MBC Br. at 27.) MBC likewise does not offer any evidence challenging the factual basis of the Committee's conclusions in revoking MBC's permit and denying it a new one, and it offers no proof otherwise calling the Committee's reasons into question as unworthy of credence or otherwise pretextual (*Id.*) As the district court aptly noted, MBC may believe the reasons offered by the Committee are harsh or unfair, but that does not amount to "evidence that the reason is a pretext for retaliation." (R. 32 at 3 (citing *Simpson v. Beaver Dam Cmty. Hospitals, Inc.*, 780 F.3d 784, 795 (7th Cir. 2015)); SA 3; *see also* R. 32 at 4 ("it is not inherently suspicious for a local government to enforce permit violations"); SA 4.)

### B. MBC Also Was Not Entitled to a Preliminary Injunction Based on the Remaining Elements of the Applicable Standard.

Although the district court properly ended its analysis upon concluding that MBC had not shown a sufficient likelihood of success on the merits of its claim, MBC also was not entitled to an injunction based on its inability to demonstrate that it would suffer irreparable harm in the absence of an injunction and based on a balancing of the harms.

MBC does not address these elements of the preliminary injunction standard in its brief before this Court.

### 1. MBC Failed to Demonstrate It Would Suffer Irreparable Harm in the Absence of the Requested Injunction.

While the unconstitutional deprivation of First Amendment rights can and often does constitute irreparable harm, *see*, *e.g.*, *Elrod v. Burns*, 427 U.S. 347, 373 (1976), the discussion above confirms the absence of irreparable harm given MBC's failure to demonstrate that any of its First Amendment rights have been unlawfully denied. *See*, *e.g.*, *Human Rights Defense Ctr. v. Sherburne County, Minnesota*, Civil No. 20-1817 ADM/HB, 2020 WL 7027840, at *6 (D. Minn. Nov. 30, 2020) (finding absence of irreparable harm, in part, based on plaintiff's failure to demonstrate that it would prevail on the merits of its First Amendment claim). As discussed below, MBC also fails to show irreparable harm for numerous additional, independent reasons.

### a. Bangstad's Continued Political Speech Undermines Any Claim of Irreparable Harm.

MBC cannot rely on the *Elrod v. Burns* presumption of irreparable harm based on "the loss of First Amendment freedoms" because it fails to identify any actual First Amendment freedoms lost due to the Committee's revocation of the CUP and its denial of a new permit. *See Houston Cmty. Coll. Sys. v. Wilson*, 595 U.S. 468, 477–78 (2022) (noting that courts may determine the materiality of an alleged adverse action in a First Amendment retaliation case using various approaches, including "inquir[ing] whether a retaliatory action adversely affected the plaintiff's … protected speech") (internal quotation marks and citation omitted); *Minocqua Brewing Co. LLC v. Town of Minocqua*, 24-cv-135-jdp, 2024 WL 1619351, at *3 (W.D. Wis. Apr. 15, 2024) (observing, in denying preliminary injunction, that "*Elrod* does not help plaintiffs because they don't identify any

First Amendment freedoms they have lost") (citing *Int'l Ass'n of Fire Fighters, Local 365 v. City of East Chicago*, 56 F.4th 437, 450–51 (7th Cir. 2022)). MBC does not even identify any way that the Committee is censoring Bangstad's speech or preventing him from engaging in expressive activity. In fact, Bangstad's political speech has continued apace. According to the amended complaint, since 2020 "MBC and Mr. Bangstad have continuously expressed their views, perspectives, and opinions in writings, publications, electronic communications, radio broadcasts, and public appearance, and they have overtly displayed various signs and posters bearing political messages in the downtown area of the Town of Minocqua." (R. 24, ¶ 13; SA 15, ¶ 13.) Likewise, during that same period, Bangstad has regularly posted on social media regarding his political opinions and his views of County and other elected and appointed officials. (R. 24, *passim*; SA 21-22, 25-28.) As recently as June 11, 2025, Bangstad posted that he would not alter his conduct regardless of the Committee's decision on the application for a new permit. (R. 24, ¶ 79, SA 28, ¶ 79.) This is because MBC's right to engage in political speech and its ability to operate a beer garden in Minocqua are not one and the same. There is no precedent to suggest that MBC must be allowed to escape permit requirements or enforcement of the Ordinance to make money selling beer and merchandise at a beer garden in order to continue with any protected First Amendment activities. *Arcara*, 478 U.S. at 707.

> **b. MBC's Only Other Claimed Harms Are Financial Losses That Could Be Remedied by Monetary Damages.**

MBC also fails to show irreparable harm because the only other harms it actually identifies are alleged financial losses that could be remedied by money damages. "[A] party seeking a preliminary injunction must demonstrate, among other things, that traditional legal remedies, such as money damages, would be inadequate." *D.U. v. Rhoades*,

825 F.3d 331, 339 (7th Cir. 2016) (citing *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the United States of America, Inc.*, 549 F.3d 1079, 1095 (7th Cir. 2008)). MBC's argument below for irreparable harm was that"[i]rreparable harm is presumed when First Amendment rights are at risk, as the loss of such rights cannot be adequately remedied by monetary damages or other legal remedies." (R. 27 at 14; SA 48.) Yet, as discussed above, MBC cannot establish any actual First Amendment harms in support of its demand for injunctive relief. Instead, in support of the motion for a preliminary injunction, MBC also asserted that, without the requested injunctive relief, it "will incur substantial financial losses." (R. 27 at 15; SA 49.) Were MBC to prevail on its First Amendment claim, any such "financial losses" could be remedied by money damages and, thus, cannot support any allegation of irreparable harm.

### c. MBC is Currently Pursuing Multiple Other Adequate Remedies at Law.

MBC also must show it has no adequate remedy at law to justify the entry of a preliminary injunction. *Cassell*, 990 F.3d at 545. Yet, MBC is currently pursuing the same or similar arguments regarding the purported retaliatory motive of the Committee and the County in revoking its CUP and in denying it a new permit in three separate lawsuits other than this action—the two forfeiture actions commenced by the County in the Oneida County Circuit Court (2024CX000002 and 2025CX000002) and the action it more recently filed in the same court (2025CV000123). Moreover, under the Ordinance, MBC has the right to challenge the Committee's denial of its application for a new CUP before the Board of Adjustment (R. 14-2, § 9.85(A)) and, if it is not satisfied with the result, via another action in the Oneida County Circuit Court pursuant to Wis. Stat. § 59.694(10).

Given these circumstances, MBC cannot persuasively contend that it has no adequate remedy at law.

### d. MBC's Delay in Pursuing a Preliminary Injunction Undermines Any Claim of Irreparable Harm.

Any assertion by MBC of irreparable harm is also severely undercut by its months-long delay in seeking a preliminary injunction. *Ty, Inc. v. Jones Group, Inc.*, 237 F.3d 891, 903 (7th Cir. 2001) ("Delay in pursuing a preliminary injunction may raise questions regarding the plaintiff's claim that he or she will face irreparable harm if a preliminary injunction is not entered."); *Shaffer v. Globe Protection, Inc.*, 721 F.2d 1121, 1123 (7th Cir. 1983) (concluding that a two month delay in seeking injunctive relief "is inconsistent with a claim of irreparable injury"). The Committee first voted to revoke the CUP in July 2024, and the revocation was confirmed in writing to MBC in September 2024 following the Wisconsin Court of Appeals' rejection of its effort to initiate an interlocutory appeal of the circuit court's denial of its motion for an injunction preventing the County from revoking the permit in the first place. (R. 14, ¶¶ 41, 47; R. 14-18, 14-26.) If MBC believed it was necessary for the district court to intervene on its behalf, it could have sought assistance from the court back in July 2024, or September 2024 at the latest. The fact that MBC sat on its hands in the intervening months cuts against any argument of irreparable harm.

### e. A Preliminary Injunction Would Alter the Status Quo.

MBC is not asking this Court to maintain the status quo; instead, as it did below, it seeks to alter the status quo by injunction. That is not the intended use of a preliminary injunction. "A preliminary injunction is an extraordinary remedy intended to preserve the status quo until the merits of a case may be resolved." *Indiana C.L. Union v. O'Bannon*, 259 F.3d 766, 770 (7th Cir. 2001). In this case, the status quo is that the CUP has been

revoked for a full year. The CUP was originally suspended in June 2024 and then revoked in July 2024. Furthermore, MBC already sought similar relief (a preliminary injunction prohibiting revocation of the CUP) in the Oneida County Circuit Court and the Wisconsin Court of Appeals. The circuit court denied this relief, and the Court of Appeals denied leave to appeal. MBC does not have a permit to conduct business, and its effort to obtain a permit by way of a preliminary injunction is an improper attempt on its part to alter the status quo.

### 2. The Balance of Harms Weighs Strongly Against an Injunction.

Even if MBC were able to demonstrate it would suffer irreparable harm in the absence of a preliminary injunction, any conceivable harm would need to "be balanced against any harm to the non-moving party and the public interest, which refers to the interests of people and institutions that are not parties to the case." *Cassell*, 990 F.3d at 545 (internal quotation marks and citation omitted). Any such balancing of harms weighs heavily against a preliminary injunction.

Granting the requested injunction would harm the County and impede its ability to implement and enforce its zoning and permitting powers under the state shoreland zoning standards and the Ordinance. This would in turn harm the public interest because, under Wisconsin law, the "public is interested in the enforcement of the zoning ordinances, as well as the owners of property specially affected." *Forest County v. Goode*, 219 Wis. 2d 654, 680, 579 N.W.2d 715 (Wis. 1998) (citation omitted). The public is particularly affected if MBC is allowed to violate zoning and permitting requirements with impunity. These requirements are in place to protect the public and the environment. The conditions that MBC failed to comply with specifically related to traffic safety, accessibility

(including ADA compliant parking spaces), and environmental concerns (including complying with MBC's own stormwater management plan). MBC, on the other hand, is not harmed by having to play by the same rules as any other business. Again, MBC is not exempt from these generally applicable regulations just because Bangstad also happens to speak out on political issues. *Arcara*, 478 U.S. at 705.

## CONCLUSION

This Court should affirm the district court's decision denying the preliminary injunction.

Dated: August 4, 2025.

Respectfully submitted:

HANSEN REYNOLDS LLC

*s/Andrew A. Jones*
Andrew A. Jones (Counsel of Record)
Andrew J. Kramer
301 N. Broadway, Suite 400
Milwaukee, Wisconsin 53202
(414) 455-7676
ajones@hansenreynolds.com
akramer@hansenreynolds.com

*Attorneys for Defendants-Appellees*

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(i) and Circuit Rule 32 because, according to the word-count feature in Microsoft Word, the brief contains 9,480 words, excluding the parts of the brief exempted from the word count by Fed. R. App. P. 32(f).

The brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5), the type-style requirements of Fed. R. App. P. 32(a)(6), and Circuit Rule 32 because the brief has been prepared in a proportionally spaced typeface using Microsoft Word in 12-point Georgia font for the body of the brief and 11-point Georgia font for footnotes.

Dated: August 4, 2025.

*s/Andrew A. Jones*
Andrew A. Jones

*Counsel for Defendants-Appellees*